## THE ROCHAMBEAU.

(District Court, D. Oregon. February 14, 1910.)

1. SHIPPING (§ 84*)—LIABILITY OF VESSELS—INJURY TO STEVEDORE.
   A ship's duty to one employed by stevedores, engaged as independent contractors in discharging the vessel, ends when it furnishes him with a safe working place and a safe passage thereto.
   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84.*]

2. SHIPPING (§ 84*)—LIABILITY OF VESSEL—INJURY TO STEVEDORE.
   Libelant was employed by stevedores, who had contracted to remove the ballast from a vessel, to run a hoisting engine used on a scow along- side the vessel. While the work was suspended during a heavy snow- storm, at the request of his employers he went along the deck of the ves- sel to look after the lines of the scow, and, slipping on a skylight, which was covered with snow, fell and was injured. The passageway across the vessel, over which libelant was required to pass from the pier to the scow, was free of snow. Held, that the vessel was not required to keep the other parts of the deck cleared of snow as fast as it fell for his protec- tion, and was not chargeable with any negligence which rendered it liable for his injury.
   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. Suit by J. E. Hatton against the French bark Rochambeau. Decree for respondent.

Albert H. Tanner and John Van Zante, for libelant.
Williams, Wood & Linthicum, for claimant.

BEAN, District Judge. Libel against the French bark Rochambeau to recover damages for a personal injury. On January 5, 1909, the bark was alongside the Oceanic Dock, in the harbor at Portland, for the purpose of removing ballast. McCabe Company, Incorporated, stevedores, were independent contractors employed for that purpose, and had a scow made fast to the bark on the outside thereof, upon which was a hoisting or donkey engine and appliances for handling the bucket or digger used in taking the ballast from the hold. The libelant was employed by McCabe Company as an engineer to operate the hoisting engine. The morning of the accident he reported for work at 6 o'clock to get up steam, preparatory to beginning the regular work of the day. To reach the scow, it was necessary for him to pass from the dock across the deck of the bark. The stevedores came to their work about 7 o'clock in the morning; but a severe snowstorm was then prevailing, and had been during most of the previous night. They worked but a short time, when they were laid off, on account of the storm. The libelant, however, was directed by his employer to remain at the scow, preparatory to resuming work later on in the day if the storm abated, and in the meantime to see that the scow was safely fastened to prevent injury to it from the high wind and storm.

About 9 o'clock in the morning, while passing along the deck of the bark to examine the stern line of the scow, he stepped on one of the skylights, which was covered with snow, and slipped and injured his knee. The skylight was not in the passage between the dock and the scow, and it was not necessary for him to pass over that part of the deck in going to or returning from his place of work. The snow had been removed from the deck of the vessel by the crew about 7 o'clock; but it was then falling, and had been all morning, and was several inches deep at the time of the accident. The claim is that the ship was negligent in not keeping the snow removed from the skylight as fast as it fell, or sprinkling it with sand or ashes, to prevent persons stepping thereon from slipping. The libelant was not a member of the ship's crew, nor employed by it. He was in the service of an independent contractor. The ship's duty to him ended when it furnished him a safe place to work, and a safe passage thereto. The Saranac (D. C.) 132 Fed. 936.

He was, however, on the vessel by its implied invitation, and it owed to him the same duty as the owner of any other premises would owe to a person thereon by invitation, and that was to use reasonable and ordinary care to keep the premises in a safe and suitable condition, so that he would not be unnecessarily or unreasonably exposed to danger. I do not think, however, that this duty required the ship, under the circumstances and in view of the storm then prevailing, to keep that portion of the deck where the accident occurred free from snow, or to remove the same as fast as it fell, or cover it with sand or ashes. It had no reason to suppose that the libelant was going there to work,

and there was nothing unusual in the construction of the vessel. The skylights were the same as are customarily used by vessels of that kind and trade. The libelant had worked along the water front for some years, and was familiar with the general construction of vessels, and must have known that they were ordinarily provided with deck or skylights, and that when he undertook to walk across the deck, covered as it was with snow, to perform some duty for his employer, he was likely to slip and fall, and necessarily assumed the risk therefrom. The unfortunate accident which resulted in his injury was unavoidable, and not attributable to any negligence or want of duty on the part of the master or crew of the vessel.

The libel is therefore dismissed.